IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 (Joliet) |
| Spiro Lempesis, ) | Case No: 13 B 38994 |
| Debtor. ) | Honorable Bruce W. Black |
| ) | |

**MEMORANDUM OPINION
REGARDING MOTION FOR CIVIL CONTEMPT
AND SANCTIONS FOR VIOLATION OF THE DISCHARGE INJUNCTION**

This matter is before the court on the Debtor's motion for civil contempt and sanctions for violation of the discharge injunction by Anthony Collaro ("Collaro"), a creditor, and his counsel, Romanucci & Blandin ("R&B," collectively with Collaro, "Respondents"). After trial and post-trial briefing, and for the reasons stated below, the motion is granted, and the Respondents are found to be in civil contempt for violation of the discharge injunction provided by section 524 of the Bankruptcy Code.[1]

### Background

The Debtor is not an admirable person. He admits to conduct that is reprehensible and unjustifiable: sexual contact with one of his players, Collaro, when he was a college baseball coach. Nevertheless, he is a debtor, and no one has suggested that he filed his bankruptcy case in bad faith. Therefore, he is entitled to the protections afforded debtors by the Code. Moreover, the time has expired for anyone to contest the dischargeability of any debt he may owe Collaro.[2] Consequently, for purposes of the present motion, the nature of the Debtor's conduct is irrelevant.

Most of the facts are not in dispute. The Debtor filed for relief under chapter 7 of the Code on October 3, 2013. On Schedule F he listed Collaro as a creditor with an unliquidated and disputed claim in the form of a lawsuit filed in May of 2013 and pending in state court against

---

[1] 11 U.S.C. §101 *ff*. Any reference to "section" or "the Code" is a reference to the Bankruptcy Code unless another reference is stated.
[2] An order was entered on February 21, 2014 granting the motion of another creditor to extend time to challenge the dischargeability of debt. The Order stated that the deadline for that particular creditor was sixty (60) days after the final disposition of that creditor's state court suit. The deadline for all other creditors, including Respondents, remained at January 17, 2014

1

the Debtor ("the first lawsuit"). On October 6, 2013, notice of the bankruptcy containing relevant information for creditors was mailed by the Bankruptcy Notification Center to creditors, including Collaro in care of his counsel in the state court case, R&B, at an address on N. LaSalle in Chicago. (Bankr. Dkt. No. 9). On November 4, 2013, upon discovering that R&B had recently moved their offices (Debtor's Ex. 3), the Debtor's attorney mailed a copy of the bankruptcy notice to R&B at their new address, 321 N. Clark Street, Suite 900, Chicago, IL 60654 and sent it via facsimile to R&B with attention to attorney Rebekah Williams ("Williams"), the lead associate at R&B assigned to the pending state court case. (Debtor's Ex. 5).

The notice included, in bold print, a warning about the automatic stay. It also included, in bold print, a statement that the deadline to object to the Debtor's discharge or to challenge the dischargeability of certain debts was January 17, 2014. No adversary proceeding regarding the Debtor's discharge or the dischargeability of any debts was ever filed in the case. The Debtor's discharge order (Bankr. Dkt. No. 20) was entered on January 21, 2014 and noticed to all creditors on the same day. (Bankr. Dkt. No. 22). The certificate of service for this notice indicates it was sent to R&B's old address on N. LaSalle in Chicago, IL. The case was closed on February 25, 2014. (Bankr. Dkt. No. 29).

Also on January 21, 2014, the Debtor appeared *pro se* in the first lawsuit and filed his answer (Debtor's Ex. 6 and Respondents' Ex. 8). The answer referred to his bankruptcy case and included the case number. Nearly three months later, on April 3, 2014, the Respondents voluntarily dismissed the first lawsuit. More than eight months after that, on December 30, 2014, Collaro, through R&B, filed a second action in state court against the Debtor ("the second lawsuit") containing the allegations and claims from the first lawsuit and some additional allegations.

On February 20, 2015, the Debtor moved to reopen the bankruptcy case and brought this motion for an order of civil contempt against the Respondents. The Debtor contends that the Respondents violated the discharge injunction by failing to dismiss the first lawsuit timely and by filing the second lawsuit. The Debtor's request to reopen the case was granted, and the motion for sanctions was fully briefed and set for trial.

### Jurisdiction

The Debtor seeks to recover damages for violation of the discharge injunction. Enforcement of the discharge injunction is a core proceeding. 28 U.S.C. §§157(b)(2)(O).[3] Therefore, this court may conduct appropriate proceedings and enter a final order in this matter. 28 U.S.C. §157(b)(1).

### Motion for Sanctions
### (Bankr. Dkt. No. 32)

The Debtor seeks to have this court invoke its equitable powers under section 105(a) to remedy the Respondents' violation of the discharge injunction set forth in section 524(a). In addition to a finding of contempt against Respondents, the Debtor's requested remedies include sanctions in the form of actual damages for emotional distress and humiliation, punitive damages, out-of-pocket expenses, as well as attorneys' fees and court costs. The request includes those fees and costs incurred for defending the second lawsuit, reopening this case, and prosecuting this motion for sanctions.

The motion does not seek damages for violation of the automatic stay even though there appears to have been such a violation from when the Respondents received notice of the bankruptcy until the discharge was entered.

### Motion *in Limine*
### (Bankr. Dkt. No. 52)

Prior to the trial, the Respondents filed a motion *in limine* seeking to bar evidence relating to punitive damages and damages for emotional distress and humiliation. The Respondents assert that (1) punitive damages are not available in an action for civil contempt; and (2) permissable remedies for violation of the discharge injunction do not include damages for emotional distress and humiliation. The court reserved ruling on the motion.

### Trial

The trial was held on November 2, 2015. Two witnesses were presented at trial: the Debtor on behalf of himself, and attorney Antonio Romanucci ("Romanucci") on behalf of the Respondents.

The Debtor testified about two relevant issues: (1) notice of the bankruptcy filing and the discharge order, and (2) his claimed damages. Romanucci's relevant testimony included the

---

[3] "Core proceedings include . . . proceedings affecting . . . the adjustment of the debtor-creditor. . . relationship."

structure of his law firm and its effect on his firm's receipt of notice of the Debtor's bankruptcy, as well as his firm's actions in the two state court cases.

The Debtor's Testimony

The Debtor testified about filing his bankruptcy case. He also testified that on January 21, 2014 – the day the Discharge Order was entered in this case – he filed his answer *pro se* in the first lawsuit. He further stated that when he filed the answer with the clerk of the circuit court of Cook County, he was told that he should mail a copy to R&B, and he promptly did so. (Tr. p. 15). His testimony in this regard was credible.

Regarding damages, the Debtor testified that he suffered emotional distress and humiliation as a result of the filing of the second lawsuit, which was filed more than eight months after the first lawsuit was voluntarily dismissed. Again, the Debtor's testimony was credible. The Debtor contends that the filing of the second suit was leaked to the press and revived interest in Collaro's claims against the Debtor. In support of his request for damages for emotional distress and humiliation, the Debtor described relentless pursuit and threats by the media that resulted in his loss of work hours and embarrassment at his place of employment. (Tr. pp. 20-27).

In support of out-of-pocket damages, the Debtor described the numerous times he appeared in state court after his bankruptcy filing, paid state court filing fees, and several instances requiring travel to meet with his attorney regarding this motion and trial. However, the Debtor offered no specific testimony for mileage or fuel, nor any calculation for any other expenses.

Romanucci's Testimony

Romanucci testified that the structure of his law firm is such that there are three litigation teams, each supervised and led by one of three partners. Each group includes at least three associate attorneys and support staff including paralegals, legal assistants, and clerical staff. The partner assigned to the team has overall responsibility for a case, with the day-to-day responsibilities handled by the team's associate attorneys. Romanucci stated that he acted as the managing partner of the firm and that any mail addressed to the firm would initially be given to him.

Romanucci stated that he was the partner on the first lawsuit and Williams was the lead associate. This meant that he would review all pleadings and documents prior to their filing or

4

issuance, as well as all answers. He professed not to have seen the answer filed by the debtor because the state court electronic filing system does not permit electronic access to documents that have been filed but merely allows review of the court's docket. Romanucci stated that he also attended status hearings on several occasions after Williams left the firm in December of 2013. At the time of her employment with the firm, Williams was responsible, along with Romanucci, for approximately 40 files or cases.

Romanucci described his firm's typical response to a notice of bankruptcy filing, stating that the response is to be urgent and "[w]e treat that as a statute in our office." (Tr. p. 77). He stated that although he was not a bankruptcy attorney, his understanding of the impact of a bankruptcy filing on his practice was such that the firm would need to lift the automatic stay in order to proceed with claims against the subject debtor.

Romanucci's description of the circumstances surrounding his voluntary withdrawal of the first lawsuit in April of 2014 included his statement that the withdrawal was not in response to the bankruptcy filing because he was not aware of the filing at that time. The withdrawal was a tactical maneuver on his part to afford the firm more time in pursuing Collaro's claims against the Debtor.

Romanucci maintained that he was also unaware of the bankruptcy filing, and the existing discharge order, when he filed the second lawsuit in December of 2014. He claimed that he did not become aware of the Debtor's bankruptcy filing until late February of 2015 when he received this motion for sanctions. However, Romanucci did not dispute that R&B had received notice of the bankruptcy no later than November of 2013.

## Discussion

Filing a petition for relief under the Code, in most cases,[4] triggers a stay or injunction that halts the rights of creditors, with certain exceptions,[5] to act to collect money or obtain property from the Debtor. This is known as the "automatic" stay because it is effective at the moment of filing of the petition for relief and does not require an order to institute the stay.[6]

---

[4] See 11 U.S.C. 362(c)(4).
[5] See 11 U.S.C. 362(b).
[6] Section 362 provides in pertinent part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

5

Absent a court order to the contrary, this stay continues from the moment the petition is filed until the entry of an order of discharge or until the case is dismissed. Although entry of the order of discharge terminates the automatic stay, a debtor is not left unprotected from the collection efforts of creditors, because the discharge injunction takes the place of the automatic stay.

The heart of bankruptcy law is the bankruptcy discharge, affording a fresh start by relieving the debtor of liability for certain pre-petition debts. Section 524(a)(2) provides:

> (a) A discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of debt is waived[.]

11 U.S.C. §524(a)(2).

The discharge order is a permanent injunction that provides the debtor with protection that survives the bankruptcy. This injunction is forever applicable to every debt that was discharged by the bankruptcy.[7]

Immediately after a petition is filed with the court, a notice is sent to all creditors containing information regarding the automatic stay and the discharge, as well as other pertinent information. *See* Fed. R. Bankr. P. 2002[8]. Proper notice of the bankruptcy is an essential element in the implementation of the automatic stay, and in obtaining relief for its violation, as well as for violation of the discharge injunction. Additionally, the bankruptcy notice provides relevant information to creditors regarding prohibited actions relating to their debts, and includes

---

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> (4) any act to create, perfect, or enforce any lien against property of the estate;
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. 362(a).

[7] Debts not subject to the discharge include debts determined to be non-dischargeable by the court, or by agreement, as well as those exceptions to the discharge as set forth in §523.

[8] An exception to this procedure is the filing of an involuntary bankruptcy. See §303.

instructions pursuant to Bankruptcy Rule 4007(c)[9] for seeking an exception to the discharge or objecting to the discharge. Accordingly, the notice of the bankruptcy also constitutes notice of the potential for the entry of the discharge, as well as the approximate date when the discharge order will be entered.

### Adequacy of Notice

The facts and circumstances of a particular case often control when considering the adequacy of notice. *In re Manzanares*, 345 B.R. 773 (Bankr. S.D. Fla. 2006), *In re Alton*, 837 F.2d 457 (11th Cir. 1988), *United States Small Business Admin. V. Bridges*, 894 F.2d 108 (5th Cr. 1990).

The Respondents appear to contend that because initial notices of the bankruptcy filing and the discharge order were mailed to an incorrect address, and because the Debtor did not inform them in person when appearing in state court that he had filed bankruptcy, they should be excused for any behavior resulting in a violation of the discharge injunction. This contention completely misses its mark.

As the Debtor credibly testified, and the exhibits show, R&B received proper notice of this bankruptcy well in advance of the deadlines regarding the discharge. Romanucci's testimony does not refute receipt of timely and proper notice to his firm. In fact, Romanucci admitted that when he received notice of this motion, he reviewed the file regarding Collaro's claims against the Debtor and at that time found the faxed notice that the firm had received in November of 2013. (Tr. pp. 76-77). Therefore, it is beyond dispute that R&B had timely and proper notice of the bankruptcy and the approximate date of the discharge order.

It does not matter that the notice of the discharge was mailed to the old address of R&B. The initial bankruptcy notice referred to both the automatic stay and the discharge. (Bankr. Dkt. 8) Thus R&B clearly received sufficient notice of, and had actual knowledge of, the Debtor's bankruptcy case and the date after which the discharge could be entered. Specifically, the notice stated, in bold type, that the deadline to object to the Debtor's discharge or to the dischargeability of a particular debt was January 17, 2014. Once attorneys receive such notice, they are obligated to determine the status of the bankruptcy case before pursuing litigation against a debtor. *In re Constantino*, 80 B.R. 865 (Bankr. N.D. Ohio 1987); *In re Manzanares*, 345 B.R. 773 (Bankr.

---

[9] Federal Rule of Bankruptcy Procedure 4007(c) permits a complaint to determine dischargeability and/or objecting to discharge to be filed up to sixty days from the first date set for the creditors' meeting under §341.

7

S.D. Fla. 2006); *In re Rhyne*, 59 B.R. 276 (Bankr. E.D. Pa. 1986), *In re Feldmeier*, 335 B.R. 807 (Bankr. D. Oregon 2005). That Williams may have left R&B without informing Romanucci of the Debtor's bankruptcy does not somehow absolve the Respondents from responsibility. The notice was received. It was in the file. The Respondents are bound by it.

R&B is also charged with knowledge of the contents of the answer the Debtor filed in the first lawsuit on January 21, 2014. The last sentence of the answer says "I am currently in bankruptcy – case #13-38994 – discharge date is Nov. 18." (Respondents' Ex. 8).[10] Romanucci testified that as the partner in charge of the case against the Debtor, he was responsible for reviewing answers that were filed to their complaints. (Tr. p. 60). Presumably, he reviewed the file in the first lawsuit before filing the second lawsuit. Had he checked the circuit court docket, he would have known the Debtor had answered.

Because R&B was representing Collaro in the state court litigation at all relevant times, notice to R&B is imputed to Collaro:

> When an attorney is representing a creditor in order to collect a debt outside of the bankruptcy, notice of the bankruptcy petition sent to the attorney by the debtor can be imputed to the creditor. *See, i.e., In re Schicke*, 290 B.R. 792, 803 (10th Cir. BAP 2003); *In re Linzer*, 264 B.R. 243, 248 (Bankr. E.D.N.Y. 2001).

*In re Herman*, 737 F.3d 449, 454 (7th Cir. 2013).

### Violations

The parties are in agreement that (1) this court has the power to hold a creditor in civil contempt for violation of the discharge injunction; (2) a debtor must prove, by clear and convincing evidence, that the creditor's violation was willful; and (3) willfulness is proved if (a) the creditor knows about the discharge injunction and (b) intends to commit the acts that violate the injunction. (Bankr. Dkt. No. 60 p. 7; Bankr. Dkt. No. 61 p. 6). *See generally* 4 Collier on Bankruptcy p. 524.02[2][c] (16th ed. rev. 2016)(hereinafter Collier).

Both the automatic stay under section 362 and the discharge injunction under section 524 prohibit creditors from taking any action to collect a debt that arose before the bankruptcy petition was filed. The Respondents willfully violated these rules in at least three ways.

First, having received notice of the Debtor's bankruptcy in November of 2013, the Respondents were required to immediately dismiss or stay the first lawsuit. *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210 (9th Cir. 2002). They did not do so until April 3, 2014.

---

[10] The Debtor appears to have incorrectly noted the date of the §341 meeting as the discharge date. The actual discharge date was January 21, 2014.

8

Therefore, they were in violation of the automatic stay from November of 2013 until the Debtor was granted a discharge on January 21, 2014. The effect of the discharge, of course, was to render Collaro's claim against the Debtor uncollectible, and all attempts to collect it are void, including maintaining the first lawsuit. Thus, when the discharge was entered, the Respondents' continuation of the first lawsuit switched from being a violation of the automatic stay, to being a violation of the discharge injunction. That violation ended when the first lawsuit was dismissed on April 3, 2014.

Second, the Respondents again violated the discharge injunction by filing the second lawsuit on December 30, 2014. That violation continued at least until February 25, 2015, when the state court judge stayed the proceeding against the Debtor at the Respondents' request. (Respondents' Ex. 1) Moreover, because the discharge rendered Collaro's claims uncollectible, the second lawsuit should have been dismissed against the Debtor, not merely stayed.

Finally, this court concludes that the interview provided to a news reporter by Collaro and Romanucci on April 10, 2015, was a further attempt to collect the discharged debt, and thus it was also a violation of the discharge injunction. (Debtor's Ex. 9).

Accordingly, the Respondents are found to be in civil contempt of this court for repeated violations of the discharge injunction. They are also found to have violated the automatic stay. The Debtor has proved these violations by clear and convincing evidence. The Respondents' conduct was in total disregard of the Code, and warrants the most serious sanctions.

### Damages

The Debtor seeks: (1) "actual damages, including damages for significant emotional distress, humiliation, and out-of-pocket expenses, ... lost wages and mileage to meet with his attorneys," (2) "attorney's fees and court costs for defending the second lawsuit and prosecuting the present motion, including all attorney's fees and court costs, incurred to reopen the Debtor's Chapter 7 case," (3) punitive damages, and (4) "any and all relief deemed fair and reasonable." (Bankr. Dkt. No. 32, p. 3).

The Respondents argue that if they are found to be in contempt, the only possible damages are "out of pocket expenses and legal fees." (Bankr. Dkt. No. 50, p. 3).

9

The court will address each element of damages requested.

Out of Pocket

The Debtor testified that he met with his attorney "three or four" times in response to the second lawsuit. (Tr. p. 26). He seeks compensation for mileage and time off work for each meeting--150 miles and four hours per meeting. He also seeks mileage, two hours off work, and $34 parking for attending the trial. He testified that he is paid $10 per hour.

The court will award compensation for three meetings with the attorney and for attending the trial. The total damages for time off work is $140.

The court finds that the Debtor drove 600 miles for the meetings and trial, but because the Debtor presented no evidence regarding a rate for compensation, the court declines to award any damages for mileage.

The court will award the Debtor $34 for parking. The court will take judicial notice of the case docket that reveals the no reopening fee was charged. Accordingly, total out of pocket damages are set at $174.

Attorney's Fees

In a contempt proceeding for a violation of the discharge injunction, a debtor is entitled to recover reasonable attorney's fees. See *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 916 (7th Cir. 2001). The parties agree on this point in their closing briefs. (Bankr. Dkt. No. 60 p. 14; Bankr. Dkt. No. 61 pp. 9-10).

Instructive on the issue of whether a fee is "reasonable" is *In re Meltzer*, 535 B.R. 803 (Bankr. N.D. Ill. 2015). In *Meltzer*, where a creditor filed an involuntary bankruptcy case in bad faith against a putative debtor, the court dismissed the case and awarded attorney's fees, other compensatory damages, and punitive damages to the putative debtor. *Id.* at 807. When determining the amount of reasonable attorney's fees, such fees "are customarily determined using the 'lodestar' method," where "the hours reasonably expended multiplied by the reasonable hourly rate" yield a presumptively reasonable fee. *Id.* at 810. Although time spent that

is "excessive, redundant, or otherwise unnecessary" will be disallowed, fees incurred responding to motions filed by a creditor are compensable attorney's fees. *Id.* at 812.

The Debtor is requesting a total of $10,958.75 for attorney's fees, based on 39.85 hours at the rate of $275 per hour. The Respondents have not disputed the time spent or the rate charged. Instead, they argue:

> The Debtor should not be entitled to recover attorney fees because the fees in this case could have been avoided had the Debtor or his attorneys contacted R&B before filing the Contempt Motion. The record is uncontroverted that: (1) neither the Debtor nor his counsel contacted R&B in the thirteen months between the entry of the discharge order and the filing of the Contempt Motion; and (2) had the Debtor contacted R&B prior to filing the Contempt Motion, this matter would be unnecessary. The Debtor's only quantifiable damages, arguably, are his attorney's fees relating to the Contempt Motion. The majority of the attorney fees were incurred after the motion was filed and relate only to litigating this matter.

(Bankr. Dkt. No. 61 p. 10) (emphasis and footnote omitted.)

The Respondents offer no authority in support of this argument, and the court does not understand how a phone call would have short circuited the litigation when the sanctions motion itself was met with a ten page response that reflected a fundamental lack of understanding of bankruptcy law and requested that the sanctions motion be denied "in its entirety." (Bankr. Dkt. No. 36 p. 10). The Respondents' argument is rejected, and the court concludes that the attorney's fees reflected on Debtor's Exhibit 11 are reasonable and thus are compensable.

In his post-trial brief, the Debtor "seeks leave of court to present evidence concerning legal fees and court costs that he has incurred on and since the date of the trial." (Bankr. Dkt. No. 60 p. 14). That request is granted, and the Debtor is given fourteen days from the date of this opinion to file his supplemental statement of fees. After the statement is filed, the Respondents are given fourteen days to respond to the statement.

Emotional Distress and Humiliation

The Debtor seeks $12,000 damages for emotional distress and another $12,000 for

11

damage to his reputation.[11] The Respondents argue only that the evidence does not "establish any emotional harm and humiliation that is causally connected to the Second Lawsuit." (Bankr. Dkt. No 61, p. 12).

Consideration of this issue must begin with *Aiello v. Providian Financial Corp.*, 239 F.3d 876 (7th Cir. 2001). The case is a class action charging a creditor with a violation of the automatic stay by improperly pressuring the debtors into reaffirmation agreements. The issue before the court was "whether the term 'actual damages' [in section 362(h)] is intended to include damages for purely emotional injury." *Id.* at 878. The court held "[t]he office of section 362(h) is not to redress tort violations but to protect the rights conferred by the automatic stay." *Id.* at 880. It affirmed the trial court's refusal to grant class certification and granting summary judgment for the defendant. After observing that "victims of tortious infliction of emotional distress in the course of a bankruptcy proceeding," could file "suit under state tort law," (*Id.*), the court continues:

> The interest in judicial economy, as embodied in the "clean-up" doctrine of equity, . . . might allow the court to "top off" relief designed to redress any financial injury inflicted by the violation of the automatic stay with an award of damages for incidental harms, perhaps including emotional distress if adequately proved, to spare the debtor from having to bring two suits. *Fleet Mortgage* may have such a case, since the misconduct of the defendant in violating the automatic stay imposed substantial legal costs on the plaintiff, which are not alleged here. No financial injury is alleged in this case, and we do not think that emotional injury is compensable under section 362(h) when there is no financial loss to hitch it to by means of the clean-up doctrine.

*Id.*

This court concludes that the same reasoning in *Aiello* regarding section 362(h) should apply to a violation of the discharge injunction under section 524. Here, of course, financial injury is alleged, including substantial attorney's fees, and this court concludes that an award of damages for emotional distress is appropriate. The Debtor should not be left to seek relief in any other court.

---

[11] The Debtor switches from a request for damages due to "humiliation" (Bankr. Dkt. No. 32 p. 3) to a request for damages to his reputation. (Bankr. Dkt. No. 60, p.14). Because no evidence was presented to support either request, the change is not significant.

*Aiello* notes that claims of emotional distress have historically been viewed with suspicion. *Id.* But recent cases are more accepting, and the leading treatise on bankruptcy law now states the general rule as follows: "Actual damages may include damages for emotional distress, which can be just as real and sometimes far more serious than damages to property interests." See Collier P 524.02[2][c] at fn. 57 (16th ed. rev. 2016).

This case appears to be one in which emotional distress has been caused by the Respondents' filing of the second lawsuit. The Debtor's testimony on the topic is credible. Nearly a year after the Debtor's discharge had been issued in January of 2014, the filing of the second lawsuit was nearly certain to cause emotional distress. After being advised, presumably, by counsel that Collaro's claims were forever barred, to find himself back in state court would be most distressing.

The court finds that emotional distress damages have been proved by clear and convincing evidence and assess them in the amount of $12,000 as requested.

The court declines to award damages for injury to the Debtor's reputation because the Debtor offered no evidence whatsoever regarding the Debtor's reputation.

Punitive Damages

The Debtor seeks punitive damages in the amount of $50,000. The Respondents argue that such damages are not available for a violation of the discharge injunction. Both sides are able to cite considerable case law in support of their positions, but this court concludes that punitive damages are available and should be awarded on the facts of this case.

Many other courts have also concluded that a bankruptcy court's power to sanction for section 524 violations includes the authority to award punitive damages. *See, e.g., Bessette v. Avco Financial Services*, 230 F.3d 439, 445 (1st Cir. 2000) (noting that "bankruptcy courts across the country have appropriately used their statutory contempt powers [to award] actual damages, attorney fees, and punitive damages" for violations of § 524); *In re Perviz*, 302 B.R. 357, 372 (Bankr. N.D. Ohio 2003) ("Bankruptcy courts have the inherent power to punish parties for their contemptuous violation of the discharge injunction through the imposition of punitive damages."); *In re Vazquez*, 221 B.R. 222, 231 (Bankr. N.D. Ill. 1998) (awarding punitive damages pursuant to § 105).

These courts provide different theories regarding where punitive damages are appropriate, but most require a finding that the creditor's conduct went beyond willfulness. *See,*

*e.g., In re Arnold*, 206 B.R. 560, 568-69 (Bankr.N.D.Ala.1997) (awarding punitive damages where the creditor acted willfully and maliciously in clear disregard and disrespect of the bankruptcy laws); *In re Walker*, 180 B.R. 834, 850 (Bankr.W.D.La.1995) (awarding punitive damages for malevolent behavior and clear violation of injunction); *In re Miller*, 81 B.R. 669 (awarding punitive damages where attorney acted willfully and in clear disregard and disrespect of the bankruptcy laws); I*n re DiGeronimo*, 354 B.R. 625, 644 (Bankr. E.D.N.Y. 2006) ("Punitive damages are typically awarded in cases where there is particularly egregious creditor misconduct."); *In re Cherry*, 247 B.R. 176, 190 (Bankr. E.D. Va. 2000) (declining to award punitive damages because creditor lacked specific intent to violate the discharge injunction); *In re Kamps*, 217 B.R. 836, 840 (Bankr.C.D.Cal.1998) (holding that any violation of the discharge injunction is punishable by damages, including punitive damages, and criminal contempt of court).

One particularly well-reasoned case from this district is *In re Vasquez*, 221 B.R. 222 (Bankr. N.D.Ill. 1998). In imposing punitive damages for violation of the discharge injunction, the court stated:

> Relevant factors that may be considered in determining whether punitive damages are appropriate for a creditor's violation of the automatic stay (and equally applicable for violations of the discharge injunction) are: (1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor. *Nigro v. Oxford Dev. Co.* (*In re M.J. Shoearama, Inc.*) 137 B.R. 182, 190 (Bankr. W.D. Pa. 1992). All of these factors have been considered here. Punitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes.

*Id* at 231.

The court continued:

> [.].. the courts that have awarded punitive sanctions for violations of the discharge injunction require actions taken with either a malevolent intent or a clear disregard and disrespect of the bankruptcy laws and that it is not sufficient to merely show that the actions were deliberate.

*Id.*

Here, the factors all favor imposing punitive damages on R&B. First, the nature of R&B's conduct was egregious. This was not an ordinary creditor acting through ignorance. These were lawyers disregarding the Bankruptcy Code. Second, Romanucci's testimony about R&B leaves no doubt about its ability to pay the amount of punitive damages requested. Third,

the motive of R&B was consistent – to collect money from the Debtor, even though the claim had been discharged. Finally, the Debtor did nothing to provoke R&B's conduct.

Accordingly, the court will assess punitive damages against R&B in the requested amount of $50,000.

The court will not assess punitive damages against Collaro, however, because the Debtor has offered no evidence regarding his financial circumstances. This is appropriate because it was R&B's conduct that was egregious, not Collaro's.

### The Motion to Supplement the Record
### (Bankr. Dkt. No. 66)

Subsequent to the trial and the post-trial briefings, the Debtor filed a motion ("new motion") in the second lawsuit seeking to lift the stay that had been imposed by the state court at the request of the Respondents. The Respondents filed a Motion to Supplement the Record in this case arguing that the filing of the new motion undermined the allegations in the Motion for Sanctions. (Bankr. Dkt. No. 66). The Motion to Supplement the Record was granted and responded to by the Debtor. (Bankr. Dkt. No. 72).

In the motion the Respondents argue that the new motion compromises the Debtor's arguments for a finding of contempt against the Respondents for violating the discharge injunction; and it compromises the Debtor's arguments in support of awarding attorneys' fees and damages for emotional distress and humiliation.

The new motion is irrelevant to all elements of contempt, as well as the arguments made by the Debtor in support of a finding of contempt. (*Supra* p. 10). The new motion has no effect on the Respondents' knowledge of the discharge. The discharge order was entered on January 21, 2014, two years before the new motion was even filed.

The new motion is also irrelevant to the Respondents' intent. The Respondents do not deny intentionally filing the second lawsuit, or intentionally staying the second lawsuit rather than dismissing it. The new motion does not concern the Debtor's bankruptcy case, the discharge, or whether the Respondents' acts were intentionally performed.

The Respondents further argue that the new motion serves to generate attorney's fees that would not have been incurred if the second lawsuit remained stayed against the Debtor. In

15

response, the Debtor claims that the new motion is part of his broader defense against criminal charges that resulted from the second lawsuit. (Bankr. Dkt. No. 72).

The attorney's fees relating to the new motion incurred in the Debtor's bankruptcy case will be recoverable. The new motion itself did not generate additional fees. The Debtor incurred attorney's fees only in the time spent responding to the Respondent's Motion to Supplement, which challenges the Debtor's allegations in litigating the motion for sanctions. *Cf. In re Meltzer*, 535 B.R. 803 (Bankr. N.D.Ill. 2015).

### Conclusion

Given the decisions above on emotional distress damages and punitive damages, the Respondent's Motion *in Limine* is denied.

The Debtor's Motion for Sanctions is granted.

The court awards damages to the Debtor against the Respondents jointly and severally for out-of-pocket expenses in the amount of $174, for attorney's fees in the initial amount of $10,958.75, and for emotional distress in the amount of $12,000, for a total of $23,132.75. The court will reserve ruling on an additional award of attorney's fees pending briefing as set forth above. (*Supra* p. 14).

In addition, punitive damages in the amount of $50,000 are awarded to the Debtor against R&B only.

A separate order will be entered following resolution of the supplemental attorney's fee application.

DATED: September 28, 2016

/s/ Bruce W. Black
Bruce W. Black
Bankruptcy Judge